By the Court,

Bkonson, J.
The relator, either as a redeeming creditor, or as the assignee of the certificate of sale, (Stat. 1835, p. 210, § 1, 2,) is clearly entitled to the deed, unless there was a good redemption by Hill. And whether Hill redeemed or not depends upon two questions : first, whether he paid money enough to redeem from the original purchaser ; and second, whether the judgment under which the relator claims was a lien on the lands; for if it was a lien, Hill should have paid the amount of that judgment, which was older than his own, as well as the original purchase money.
1. Did Hill make a sufficient'payment to effect a redemption as against the original purchaser 1 As to the sovereigns, the evidence is balanced, and it is impossible for us to say that the sheriff received them at more than their legal value. But if the relator’s proof was undisputed, and the sovereigns were in truth paid at a few cents beyond their legal value, yet as they were accepted by the sheriff at their current value, without objection, it was a good payment. The five-franc pieces were paid and received by tale at their current value, amounting in the gross to $2,81, when their legal value was two cents less than that sum. This payment stands on nearly the same footing as that in relation to the sovereigns, and the maxim de minimis non curat lex may be applied to both.
As to the other foreign coins, being Spanish and Mexican quarters of a dollar and six-penny pieces, it was conceded on the argument that they were not a legal tender, and without stopping to examine the acts of congress, I shall assume the fact to be correctly stated. Although not a legal tender, they were current coins, such as are usually received bj tale, and were accepted by the sheriff, without objection, at their current value in the community. This was a good payment. The case does not fall within the principle of Dickinson v. Gilliland, (1 Cowen, 481,) where the redeeming creditor, through a mistake of the law, paid only seven per cent, interest, when *616 he should have paid ten. Nor is it like the case of The Peru Iron Company, (7 Cowen, 540,) where, in consequence of erroneous information, the creditor did not pay half so much money as should have been paid. It is like the case of a payment in current bank bills, which, though not a legal tender, if accepted by the sheriff, without objection, would be a good payment for the purpose of redeeming.
2. Hill did all that was necessary for the purpose of redeeming from the original purchaser, and the only remaining question is, whether he should have also paid the Record judgment which was older than his, and under which the relator had redeemed as assignee. That depends on the question whether this judgment was a lien on the debtor’s lands in the county of Erie, where it had not been docketed. The suit was commenced before and the judgment was recovered after the reform act of 1840 (Stat. 1840, p. 327) took effect as a law.
The 38th section of the act of 1840 is in the following words : “ This act shall not affect any suit or proceeding, nor the fees or costs therein, which shall be commenced before the same shall take effect.” It is settled that this governs the form and time of issuing writs of fieri facias, as provided for by the 24th section. (The N. Y. and Shawangunk Mining Company, 22 Wend. 636; Commercial Bank of Oswego v. Ives, 2 Hill, 355; Stone v. Green, 3 id. 469.) So, too, it has often been held that the first thirteen sections, which relate to costs, do not affect the costs in suits commenced before the act took effect, though I do not recollect that any case upon that point has been reported.(a) There are other sections relating to costs, and various provisions on other subjects, which are undoubtedly governed by the 38th section.
But the several sections relating to the docketing and lien *617 of judgments and decrees are peculiar in their phraseology, and, by express words, apply to all judgments which are recovered or perfected after the act took effect, without any reference to the time when the suit was commenced. “ JVo judgment or decree which shall be entered after this act takes effect, shall be a lien upon real estate, unless the same shall be docketed” in the clerk’s office of the county “ where the lands are situate.” (§25.) “After this act takes effect, when a judgment shall be perfected in the supreme court,” the clerk shall furnish transcripts for the purpose of having the same docketed by the county clerk. (§ 26.) Sections 27 and 28 carry out these provisions in relation to decrees^ in chancery, the judgments of the superior court of the city of New-York, and the several mayors’ courts. The 29th section provides, that “the judgments of the superior court of the city of New-York, and of any court of common pleas, recovered after this act takes effect ,” may be docketed in other counties. And by the 31st section, “ the lien of every judgment or decree to be docketed after this act takes effect, shall cease to have preference &c. at the expiration of five years from 'the day when the judgment was perfected, or the decree enteredNothing can be more clear than that the legislature intended this statute, when it came into operation, should apply to and control the docketing and lien of all subsequent judgments and decrees, without any reference to the time when the suit was commenced. It is true that the 38th section is broad enough in its terms to cover every provision in the act; but it must be read with such a qualification's will not bring it into direct conflict with other portions of the same statute. Although the language extends to every suit and proceeding previously commenced, an exception must be understood and implied as to those sections in which the legislature had specially provided for the application of a different rule. This is the only way in which the different parts of the act can have effect, without being brought into direct and necessary conflict with each other.
So far as arguments ab inconvenienti may be regarded, they *618 tend strongly in favor of this construction. The primary object of the sections relating to the docketing of judgments and decrees was, to make the clerk’s office of the county the only place where a search need be made for the purpose of ascertaining what liens and charges existed upon any lands in that county. It is a most important provision for the saving of time and expense, and is highly beneficial to the whole community. But if we adopt the relator’s construction, we shall defeat one of the great ends for which the statute was passed. It may be many years before all the suits at law and in equity which were commenced prior to June 1st, 1840, will be finally determined and the judgments and decrees therein perfected j and no one can safely purchase or take a mortgage upon lands until he has searched all the clerk’s offices of this court, in the same manner as would have been necessary if the acv of 1840 had not been passed. I am unwilling to adopt a construction which will conflict thus directly with the policy of the law.
We are of opinion that the relator’s judgment was not a lien on the land, and his motion must consequently be denied. But as the question is an important one, he may, if he shall so elect within thirty days, have an alternative mandamus for the purpose of putting the question on record with the view to a writ of error.
Ordered accordingly.

 See Larmon v. Aiken, (ante, p. 591,) as to costs upon writs of error brought since the statute, for the purpose of reversing judgments rendered before.